**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TABITHA KILES, et al.,** | ) | **CASE NO. 5:26CV179** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | **OPINION AND ORDER** |
| **THE GOODYEAR TIRE & RUBBER COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #20) of Defendant The Goodyear Tire & Rubber Company to Dismiss the Claims of Plaintiffs Tabitha Kiles, Harold Vargas, Joe Berry, Shannon Owen and David Smith under Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6). For the following reasons, Defendant's Motion is granted in part and denied in part.

## I. BACKGROUND

The above-captioned case was transferred from the Southern District of Ohio on January 23, 2026. The First Amended Class Action Complaint was filed on February 27, 2026. (ECF DKT #12).

For Goodyear employees to maintain health insurance coverage under the Goodyear Health Plans, they are required to declare during an annual benefit period whether they use nicotine products. Those Goodyear employees who do use nicotine products are required to pay an additional fee ("nicotine surcharge") – which was $100 per month or $1,200 per year through

the end of 2025 and $150 per month or $1,800 per year starting in 2026. (ECF DKT #12, ¶ 3). The surcharge is assessed per participant and beneficiary (*e.g.*, spouse). From 2020 to 2025, Goodyear associates and their beneficiary spouses paid $17,419,200 in nicotine surcharges. (*Id.*, ¶ 10).

Nicotine surcharges must strictly comply with the terms of the Employee Retirement Income Security Act of 1974 ("ERISA"), the Public Health Service Act ("PHSA") and the implementing regulations. (*Id.*, ¶ 11). ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health-status-related factor, including nicotine use, unless that fee is part of a bona fide "wellness program." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). (*Id.*, ¶ 13). To qualify as a bona fide wellness program under ERISA, a company must offer a "reasonable alternative standard" (for example, a smoking cessation program), by which a participant can receive the program's "full reward. (*Id.*, ¶ 14). A company must also provide notice that such a reasonable alternative exists for nicotine users in every Plan communication discussing the premium differential, including contact information and a statement that the recommendations of participants' physicians will be accommodated. (*Id.*, ¶ 15). Several of Goodyear's participant-facing materials describe the nicotine surcharge and the increased premium contributions imposed on participants, but do not provide compliant notice of all the avenues by which participants can avoid the surcharge, including the physician-accommodation statement, as expressly required by 45 C.F.R. § 146.121(f)(4)(v). (*Id.*, ¶ 16). According to Plaintiffs' First Amended Complaint, Goodyear failed to comply with all the statutory and regulatory criteria needed to take advantage of ERISA's "safe harbor;" thus, the nicotine surcharge violates ERISA's anti-discrimination requirements and its collection by

Goodyear was, and continues to be, unlawful. (*Id.*, ¶ 18).

Plaintiffs are former employees of Goodyear who paid the nicotine surcharge to maintain health insurance coverage under the Plans. Plaintiffs bring this lawsuit individually and on behalf of a Class of Participants and Beneficiaries of the Goodyear Health Plans, seeking to have the allegedly unlawful nicotine surcharges returned and seeking plan-wide relief under 29 U.S.C. § 1109 (ERISA § 409) and 29 U.S.C. § 1132(a)(2) (ERISA § 502(a)(2)) and equitable relief under 29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)). (*Id.*, ¶ 20).

Plaintiff Tabitha Kiles was hired on June 24, 2019, to work as a Tire Assembler at the Goodyear facility in Lawton, Oklahoma. Her employment ended on August 18, 2025. Since at least 2019, Kiles has been a nicotine user. Kiles received health insurance through Goodyear and signed up as a nicotine user during open enrollment each year of her employment. During her employment, Kiles paid $7,400 in nicotine surcharges. (*Id.*, ¶ 21). "Plaintiff Kiles does not recollect reading about or learning about a nicotine cessation program at Goodyear through any Plan notices or communications she received and therefore did not know of the availability of a nicotine cessation program through Goodyear and her ability to receive a full reimbursement of those nicotine surcharges once she finished the cessation program." (*Id.*, ¶ 22).

Plaintiff Harold Vargas, a citizen of Illinois, was an employee of Goodyear who paid a tobacco surcharge of $100 per month in order to maintain health insurance under the Plans.

Plaintiff Joe Berry, a citizen of Oklahoma, was an employee of Goodyear who paid a tobacco surcharge in order to maintain health insurance under the Plans.

Plaintiff Shannon Owen, a citizen of North Carolina, was an employee of Goodyear who paid a tobacco surcharge in order to maintain health insurance under the Plans.

Plaintiff David Smith, a citizen of Oklahoma, was an employee of Goodyear who paid a tobacco surcharge in order to maintain health insurance under the Plans.

The Goodyear Health Plans' Summary Plan Descriptions ("SPD") provide:

> (1) "U.S. Goodyear associates and spouses enrolled in a company-sponsored medical plan can . . . access the Quit For Life program from the American Cancer Society at no cost. Visit: www.quitnow.net or call 1-866-QUIT-FOR-LIFE (1-866-784-8454) for more details;" (2) "to have the surcharge removed upon completion of the nicotine cessation program, review the Employee Assistance Program website at www.achievesolutions.net/goodyear and then call the Goodyear Associate Service Center at (844) 449-4772 to complete the Nicotine Declaration verbally. Your (or your spouse's) tobacco/nicotine user status will change to 'No.' Reimbursement will be retroactive to all surcharges imposed in the current Plan year.
> (*Id*., ¶ 49).

"[A]lthough Goodyear has set up a reasonable alternative standard for nicotine users to avoid the nicotine surcharge upon completion, Goodyear failed to provide the physician accommodation statement in the SPD and failed to provide required information of its tobacco cessation program in all the Goodyear Health Plans' communications about the nicotine surcharge program." (*Id*., ¶ 51). For example, fliers distributed to employees about quitting nicotine and discussing the nicotine surcharge program, omit information about reimbursing the surcharge or avoiding a surcharge with a physician's recommendation. (*Id*., ¶¶ 52-53).

Plaintiffs' First Amended Class Action Complaint (ECF DKT #12) sets forth three counts. In their First Claim, Plaintiffs allege that Defendant failed to give the required notice and violated ERISA Section 502(a)(3). Defendant's participant-facing materials discussing the nicotine surcharge under the Plans do not include the required disclosures, including a statement that recommendations of an individual's personal physician will be accommodated. Without including these mandatory disclosures, the nicotine surcharge program fails to satisfy the notice

requirements, is discriminatory and is unlawful. Consequently, the surcharges paid by Plaintiffs were illegal.

In their Second Claim, Plaintiffs allege that Defendant breached its fiduciary duties under ERISA Section 502(a)(2). Defendant chose to use the Plans' assets to exclusively benefit itself, to the detriment of the Plans and their participants, by withholding tobacco surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plans. As alleged in ¶ 96:

> Goodyear breached its fiduciary duties by administering Plans that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by using ill-gotten funds to shrink its own financial contributions. It also failed to properly notify participants, year after year, of a compliant wellness program and failed to review the terms of the Plans to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

In the Third Claim, Plaintiffs allege that Defendant breached its fiduciary duties under ERISA Section 502(a)(3). ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). Also, as alleged in ¶ 110:

> Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plans, Defendant engaged in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1).

In its Motion (ECF DKT #20), Defendant contends that Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiffs have not

suffered any concrete harm and therefore, lack standing. Plaintiffs' claims should also be dismissed under Rule 12(b)(6) because they fail to state a claim upon which relief can be granted.

The Motion has been fully briefed. In addition, the parties have submitted supplemental, non-binding authorities from multiple jurisdictions for the Court's consideration. The Court further notes, however, that the Goodyear Health Plans at issue have not been made a part of the record.

## II. LAW AND ANALYSIS

### Standing and Subject Matter Jurisdiction

The Constitution limits federal court jurisdiction to actual "cases" or "controversies." U.S. Const., art. III, § 2, cl. 1. Standing to sue is one aspect of the case-or-controversy requirement. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). In order to assert constitutional standing a plaintiff must have "'such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Plaintiff bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

"To satisfy Article III's standing requirements, a plaintiff must show: '(1) [she] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606–607 (6th Cir. 2007);

*Friends of the Earth, Inc. v. Laidlaw Environmental. Servs*., 528 U.S. 167, 180–181 (2000). For an injury to be particularized, it must "affect the plaintiff in a personal and individual way." *Spokeo v. Robbins*, 136 S.Ct. 1540, 1548 (2016); *Soehnlen*, 844 F.3d at 581-582; see also *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc*., 454 U.S. 464, 472 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury").

To emphasize further, Article III standing is an indivisible element of federal court subject matter jurisdiction and want of subject matter jurisdiction cannot be waived. *Clark v. Paul Gray, Inc*., 306 U.S. 583 (1939); *Curry v. U.S. Bulk Transport, Inc*., 462 F.3d 536, 540 (6th Cir. 2006).

**Fed.R.Civ.P. 12(b)(6)**

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss

> can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679.

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

"Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ... a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable ..." *Twombly*, 550 U.S. at 556.

**Statutory Framework**

Employer health care plans must comply with ERISA, 29 U.S.C. §§ 1001-1461. A health insurance plan "may not require any individual . . . to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." 42 U.S.C. § 300gg-4(b)(1); 29 U.S.C. § 1185d. Different premiums may be charged, however, based on employees' participation in "programs of health promotion and disease prevention." 42 U.S.C. § 300gg-4(b)(2)(B). The employer's health plan must comply with specified statutory requirements: The plan must give eligible

individuals the opportunity to qualify for the reward under the program at least once each year; and the full reward shall be made available to all similarly situated individuals. The program must allow for a "reasonable alternative standard" that accommodates people with medical conditions that make it "inadvisable" or "unreasonably difficult" to complete the wellness program. Lastly, every plan document that "describes the terms of the wellness program" must also disclose "the availability of a reasonable alternative standard," although such disclosure is unnecessary if a plan document only discloses the available program, without describing its terms. 42 U.S.C. §§ 300gg-4(j)(3)(C)--(E).

**42 U.S.C. § 300gg-4(j)(3)**

> **(3) Wellness programs subject to requirements**
>
> If any of the conditions for obtaining a premium discount, rebate, or reward under a wellness program as described in paragraph (1)(C) is based on an individual satisfying a standard that is related to a health status factor, *the wellness program shall not violate this section if the following requirements are complied with*:
>
> (A) The reward for the wellness program, together with the reward for other wellness programs with respect to the plan that requires satisfaction of a standard related to a health status factor, shall not exceed 30 percent of the cost of employee-only coverage under the plan. If, in addition to employees or individuals, any class of dependents (such as spouses or spouses and dependent children) may participate fully in the wellness program, such reward shall not exceed 30 percent of the cost of the coverage in which an employee or individual and any dependents are enrolled. For purposes of this paragraph, the cost of coverage shall be determined based on the total amount of employer and employee contributions for the benefit package under which the employee is (or the employee and any dependents are) receiving coverage. *A reward may be in the form of a discount or rebate of a premium or contribution*, a waiver of all or part of a cost-sharing mechanism (such as deductibles, copayments, or coinsurance), *the absence of a surcharge*, or the value of a benefit that would otherwise not be provided under the plan. The Secretaries of Labor, Health and Human Services, and the Treasury may increase the reward available under this subparagraph to up to 50 percent of the cost of coverage if the Secretaries determine that such an increase is appropriate.

> (B) *The wellness program shall be reasonably designed to promote health or prevent disease.* A program complies with the preceding sentence if the program has a reasonable chance of improving the health of, or preventing disease in, participating individuals and it is not overly burdensome, is not a subterfuge for discriminating based on a health status factor, and is not highly suspect in the method chosen to promote health or prevent disease.
>
> (C) *The plan shall give individuals eligible for the program the opportunity to qualify for the reward under the program at least once each year.*
>
> (D) *The full reward under the wellness program shall be made available to all similarly situated individuals.* For such purpose, among other things:
>
> (i) *The reward is not available to all similarly situated individuals for a period unless the wellness program allows--*
>
> (I) *for a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual for whom, for that period, it is unreasonably difficult due to a medical condition to satisfy the otherwise applicable standard*; and
>
> (II) *for a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual for whom, for that period, it is medically inadvisable to attempt to satisfy the otherwise applicable standard.*
>
> (ii) *If reasonable under the circumstances, the plan or issuer may seek verification, such as a statement from an individual's physician, that a health status factor makes it unreasonably difficult or medically inadvisable for the individual to satisfy or attempt to satisfy the otherwise applicable standard.*
>
> (E) *The plan or issuer involved* ***shall disclose*** *in all plan materials describing the terms of the wellness program the* ***availability of a reasonable alternative standard*** *(or the possibility of waiver of the otherwise applicable standard)* ***required under subparagraph (D).*** *If plan materials disclose that such a program is available, without describing its terms, the disclosure under this subparagraph shall not be required.*

(Emphasis added).

Effective 2014, the Department of Labor ("DOL") incorporated these requirements into its **final regulations** for non-discriminatory wellness programs. Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158,

33181–86 (June 3, 2013) (codified at 29 C.F.R. § 2590.702).

**29 C.F.R. 2590.702(f)(4)(v)**

(v) Notice of availability of reasonable alternative standard. The plan or issuer *must disclose in all plan materials describing the terms of an outcome-based wellness program*, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), *including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated.* If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required. Sample language is provided in paragraph (f)(6) of this section, as well as in certain examples of this section.

* * * * *

**Example 6— Tobacco use surcharge with smoking cessation program alternative**. (i) Facts. In conjunction with an annual open enrollment period, a group health plan provides a premium differential based on tobacco use, determined using a health risk assessment. The following statement is included in all plan materials describing the tobacco premium differential: "Stop smoking today! We can help! If you are a smoker, we offer a smoking cessation program. If you complete the program, you can avoid this surcharge." The plan accommodates participants who smoke by facilitating their enrollment in a smoking cessation program that requires participation at a time and place that are not unreasonably burdensome or impractical for participants, and that is otherwise reasonably designed based on all the relevant facts and circumstances, and **discloses contact information and the individual's option to involve his or her personal physician. The plan pays for the cost of participation in the smoking cessation program. Any participant can avoid the surcharge for the plan year by participating in the program, regardless of whether the participant stops smoking, but the plan can require a participant who wants to avoid the surcharge in a subsequent year to complete the smoking cessation program again.** (Emphasis added).

**Statutory Construction**

Rules of statutory construction have been clearly outlined by the U.S. Supreme Court and the Sixth Circuit Court of Appeals.

"It is, however, a cardinal principle of statutory construction that we must 'give effect, if possible, to every clause and word of a statute.' " *Williams v. Taylor*, 529 U.S. 362, 404 (2000); *United States v. Menasche*, 348 U.S. 528, 538–539 (1955) (quoting *Inhabitants of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152 (1883)).

A fundamental canon of statutory construction is that "when interpreting statutes, the language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." *Thompson v. Greenwood*, 507 F.3d 416, 419 (6th Cir. 2007); *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001).

**<u>Failure to Give Required Notice Claim</u>**

Defendant argues that Plaintiffs' allegations in their First Claim do not satisfy Article III standing. Plaintiffs allege that Defendant's Plan documents describing the nicotine surcharge (which Plaintiffs paid) do not include the required statement that recommendations of an individual's personal physician will be accommodated as part of a reasonable alternative standard. The lack of disclosure allegedly violates ERISA's anti-discrimination guidelines (42 U.S.C. § 300gg-4(j)(3); 29 C.F.R. 2590.702(f)(4)(v)) and is illegal.

Defendant insists that this constitutes an informational injury only; not a concrete injury-in-fact suffered by Plaintiffs and fairly traceable to Defendant's actions. *Soehnlen*, 844 F.3d at 581-582. Further, Defendant argues that the First Claim lacks any allegation that Plaintiffs suffered from a medical condition that would have entitled them to use the physician alternative or that Plaintiffs would have acted differently if they had received the undisclosed information. Defendant points out that an alleged injury must "derive from the purportedly unlawful conduct," else the injury will not be "fairly traceable" to Defendant's conduct as mandated by Article III standing principles.

The standing principles articulated by Defendant are valid; however, the Court is not persuaded by Defendant's challenges to Plaintiffs' pleading. Plaintiffs are not alleging that they were injured by the failure to notify. Rather, Plaintiffs allege that the Goodyear wellness plan

violated ERISA, 42 U.S.C. § 300gg-4(j)(3); 29 C.F.R. § 2590.702(f)(4) by failing to disclose the availability of the personal physician accommodation in all communications about the nicotine surcharge program. By not meeting the applicable requirements, Goodyear could not lawfully impose the tobacco surcharge on nicotine users. The surcharge was illegal; whether Plaintiffs would have acted differently to avoid paying it or whether Plaintiffs were entitled to avail themselves of the physician option. Numerous courts that have addressed the issue have found that plaintiffs who pay a surcharge with respect to an allegedly illegal wellness program have standing. *See Noel v. Pepsico, Inc. & Pepsico Admin. Comm*., No. 24-CV-7516 (CS), 2026 WL 558118 (S.D.N.Y. Feb. 27, 2026) (collecting cases).

Plaintiffs, who paid the unlawful monthly surcharges, suffered direct monetary harm; and thus, have constitutional standing.

Additionally, Defendant argues that Plaintiffs' defective notice allegations fail to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). Defendant insists that the Plan materials comply with statutory requirements. The statute governing wellness programs does not mandate the disclosures Plaintiffs contend are missing in participant-facing documents.

Defendant asserts that "plaintiffs identify only two purported criteria that Goodyear allegedly doesn't satisfy: disclosure of the physician alternative in all Plan documents and disclosure that the surcharge reimbursements would be retroactive in certain documents." (Reply Brief, ECF DKT #25 at 16). Goodyear's Plan materials satisfy the applicable statute, Section 300gg-4(j)(3)(E), by advising plan participants of the Quit for Life program. The claim that the Plan does not disclose a physician alternative fails as a matter of law because the requirement for that disclosure appears only in the regulation, and not in the statute. Defendant contends that

since *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S.. 837 (1984) is no longer good law, agency interpretations do not warrant deference. The disclosure requirement should not be enforced post-*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Moreover, Defendant argues that the regulation conflicts with the statute's express language; so, the regulation should not be enforced. (ECF DKT #25 at 19).

In 29 U.S.C. § 1135, Congress empowers the Departments of Labor, Health and Human Services and Treasury to "prescribe such regulations as [they] find[] necessary or appropriate to carry out the provisions of" Title I of ERISA. Further, pursuant to 42 U.S.C. § 300gg-4(n): "Nothing in this section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section."

The Supreme Court explained in *Loper Bright*, 603 U.S. at 395, that some statutes "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme, *Wayman v. Southard*, 10 Wheat. 1, 43, 6 L.Ed. 253 (1825), or to regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,' *Michigan v. EPA*, 576 U.S. 743, 752, 135 S.Ct. 2699, 192 L.Ed.2d 674 (2015), such as 'appropriate' or 'reasonable.' "

*Trout v. Meijer, Inc.* ("*Trout* I"), Case No. 1:25-cv-1378, 2026 WL 1098213, *7 (W.D.Mich. Apr. 23, 2026) further instructs in this regard:

> When faced with a purported delegation of authority to an agency, "[a] court plays its part by (1) 'recognizing constitutional delegations,' (2) 'fixing the boundaries of the delegated authority,' and (3) 'ensuring the agency has engaged in reasoned decisionmaking within those boundaries.' " *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587 (6th Cir. 2025) (quoting *Loper Bright*, 603 U.S. at 371).

Therefore, the Court recognizes the delegation to the DOL of the authority to promulgate regulations that the DOL finds "necessary" and "appropriate" to carry out 42 U.S.C. § 300gg-4,

which governs non-discriminatory wellness programs. The Court is empowered to construe the statute and to assure there is harmony between the regulations and the statute, and not impermissible conflict. The Court's role is "to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright*, 603 U.S. at 395. The Court agrees with the conclusion in *Trout I*, Case No. 1:25-cv-1378, 2026 WL 1098213, *8, that "§ 2590.702 is a clarification of § 300gg-4's notice requirements rather than an additional requirement." Regulations that "fill up the details" of a statutory scheme are not invalid under *Loper Bright*, 603 U.S. 369, 395. The regulatory framework at issue properly fills in details and clarifies the requirements for outcome-based programs and for what constitutes an available reasonable alternative standard.

Thus, § 2590.702(f)(4)(v)'s requirement that documents describing an outcome-based wellness program also must disclose that physician recommendations will be accommodated is valid. Plaintiffs have alleged a plausible claim that Goodyear's Plan materials violate that requirement, rendering the wellness program and associated nicotine surcharge illegal.

Defendant's Motion to Dismiss the First Claim of Plaintiffs' Amended Complaint under Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6) is denied.

**Breach of Fiduciary Duty**

Plaintiffs bring claims for Breach of Fiduciary Duty under ERISA § 502(a)(2) [Second Claim for Relief] and under ERISA § 502(a)(3) [Third Claim for Relief]. The Court will consider these two Claims together and determine whether the allegations set forth plausible claims entitling Plaintiffs to relief.

ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in

the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104. "[A] fiduciary's obligation is implicitly circumscribed by the plan at issue and its promise of benefits." *Donelson v. Meijer, Inc.*, 826 F.Supp.3d 898, 902 (W.D. Mich. 2025).

According to Plaintiffs' allegations, Defendant chose to benefit itself, to the detriment of the Plans and their participants, by withholding tobacco surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plans. Defendant further breached its fiduciary obligations by engaging in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself.

Unfortunately, Plaintiff does not provide the relevant Plan documents; so, the Court is unable to determine the scope of Goodyear's obligations, authority or discretion under the Plan's terms, or ascertain if Goodyear committed to contributing a specific amount toward health coverage.

Defendant argues that the fiduciary-duty claims fail because they challenge settlor, and not fiduciary, conduct. Establishing, funding, amending and terminating a plan as an employer are settlor functions. *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000).

"We have recognized that employers who are also plan sponsors wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust." *Hunter*, 220 F.3d at 718; see also, *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir.1995); *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir.1992); *Musto v.*

*American Gen. Corp*., 861 F.2d 897, 911 (6th Cir.1988).

"ERISA does not require that day-to-day corporate business transactions, which may have a collateral effect on prospective, contingent employee benefits, be performed solely in the interest of plan participants." *Akers*, 71 F.3d at 231. "[O]nly discretionary acts of plan management or administration, or those acts designed to carry out the very purposes of the plan, are subject to ERISA's fiduciary duties." *Id*.

Collection of a surcharge has been held in this District to be a feature of the Plan which implicates a settlor function. *See Greene v. Progressive Corp*., 1:24CV1890, 2026 WL 785004, *11-12 (J. Ruiz N.D. Ohio Mar. 20, 2026) (currently on appeal, Sixth Circuit Court of Appeals No. 26-3351).

Also, a number of courts have opined that claims that a tobacco surcharge reduced the employer's contributions to the plan do not implicate fiduciary conduct. *Greene, id.*; *Noel v. PepsiCo, Inc*., 832 F.Supp.3d 303, 2026 WL 558118, at *15 (S.D.N.Y. Feb. 27, 2026); *Trout v. Meijer, Inc.* ("*Trout I*"), 2026 WL 1098213 at *13.

The Court finds this case law persuasive and determines that Plaintiff's allegations against Defendant in the Second and Third Claims do not implicate fiduciary duties.

Moreover, Plaintiffs' allegations in their Second and Third Claims fail to support a right to relief under the relevant statutes.

In a civil action brought by a plan participant pursuant to ERISA, Section 502(a); 29 U.S.C. § 1132(a)(2), fiduciaries who breach their duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the

fiduciary." 29 U.S.C. § 1109(a).

To state a claim under § 502(a)(2), Plaintiffs must allege in their Second Claim that Defendant's collection of nicotine surcharges either caused a monetary loss to the Plan or caused Defendant to gain profits that should have gone to the Plan instead. Plaintiffs make mere bare-bones, conclusory allegations, such as: "Defendant chose to use the Plans' assets to exclusively benefit itself, to the detriment of the Plans and their participants;" "Goodyear enriched itself at the expense of the Plans;" "Goodyear secured financial savings for itself while participants and the Plans bore increased costs;" "The surcharges should have supplemented, not displaced, Goodyear's contributions," . . ., "leaving the Plans with less than what they should have received under its governing documents."

Plaintiffs fail to sufficiently allege harm to the Plan in the form of losses or missed opportunities for profit. Plaintiffs offer no facts to support the inference that Defendant's choice to use tobacco surcharges to reduce its own contributions negatively impacted the ability of the Plans to pay out promised benefits. Conceivably, Defendant's use of the nicotine surcharges could have indirectly cause employee-participants to pay higher premiums; but that suggests a harm to those employees and not to the Plans.

As the Court has already commented, aside from quoting the SPD regarding the tobacco cessation program, Plaintiffs' pleading supplies none of the governing Plan documents or materials. Plaintiffs point to no provision in the Plan that creates a duty requiring Defendant to add the collected surcharges on top of its own contributions. In the absence of any detailed terms from the Plan in the record before the Court, Plaintiffs have failed to state a claim of harm to the Plan under § 502(a)(2).

Plan participants may bring an action for individualized equitable relief under § 502(a)(3) for violations of fiduciary duty. The Court has already determined that Defendant's collection of tobacco surcharges is a feature of plan design and does not implicate Defendant Goodyear's fiduciary duties. In addition, the Court has found that Plaintiffs set forth a plausible claim that the surcharges are unlawful because Defendant failed to include proper disclosures in participant-facing materials. Informing participants about a plan *is*, to be clear, a fiduciary function. *Sprague v. General Motors Corp*., 133 F.3d 388, 405 (6th Cir. 1998).

Plaintiffs' downfall, however, is that they fail to allege that the lack of notification or disclosure is the relevant breach of fiduciary duty harming them individually. In fact, the Court holds Plaintiffs to their own declaration in the Opposition Brief (ECF DKT #24 at 8): "This is not a disclosure case. It is a statutory violation case. The notice requirements Defendant minimizes are conditions of the statutory exception it invokes."

Thus, the Court finds that Plaintiffs fail to state a claim under § 502(a)(3) for individualized harm to themselves as plan participants caused by a breach of fiduciary duty related to Defendant's lack of disclosures.

**<u>Prohibited Transaction</u>**

Plaintiffs allege that Defendant withheld millions of dollars in tobacco surcharges from participants' paychecks and used these funds to offset its own obligation to contribute to the Plan. In doing so, Defendant allegedly engaged in self-dealing and engaged in an exchange of Plan assets for the benefit of a party in interest – itself – in violation of 29 U.S.C. § 1106.

In *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996), the Supreme Court described the types of transactions set forth in § 1106(a) as "commercial bargains that present a special risk of plan

underfunding because they are struck with plan insiders, presumably not at arm's length." *Id*. at 893. These transactions "generally involve uses of plan assets that are potentially harmful to the plan." *Id***.**

Plaintiffs do not allege that there was, as a result of Goodyear's conduct, an insufficient amount in the Plans to pay employee benefit claims. The Court cannot discern from any allegations in the First Amended Complaint whether Goodyear is required under the Plan documents to contribute a specific amount or merely to pay the difference between participants' contributions and Plan costs.

In *Noel v. Pepsico*, 832 F.Supp.3d at 328-329, the district court for the Southern District of New York determined that "the crux of [Plaintiff's] allegation is that Defendants ultimately contributed less of their own funds to the Plan, not that the Plan was shortchanged." "[W]hether [Defendants] benefited [*sic*] from a reduced financial obligation to the Plan by depositing the tobacco ... surcharges [they] collected into the Plan is irrelevant to whether the Plan experienced a loss, which the Court finds Plaintiff[ ] ha[s] not plausibly alleged."

Similarly here, Plaintiffs have not plausibly alleged that the Plans are underfunded or unable to satisfy employee benefit claims as the result of Defendant's use of the nicotine surcharges. The Court finds that the First Amended Complaint states no claim for relief from a prohibited transaction in violation of 29 U.S.C. § 1106.

**Leave to Amend**

At the close of their Opposition Brief (ECF DKT #24 at 32), Plaintiffs request leave to amend to address the Court's possible concerns as to any deficient aspect of the Amended Complaint. The docket reflects that the Plaintiffs' Complaint has already been amended once.

The Court adheres to the Sixth Circuit's guidance that a plaintiff must properly file a motion for leave to amend and cannot merely insert such a request in a brief in opposition. *Prim Capital Corp. v. Pippen*, No. 1:09CV561, 2009 WL 2579810, *2 (N.D. Ohio Aug. 19, 2009) (citing *Begala v. PNC Bank, Ohio N.A.*, 214 F.3d 776, 784 (6th Cir. 2000). The policy behind this is that district courts should not stand to "rescue" plaintiffs from the deficiencies of their complaints by offering leave to amend when plaintiffs do not properly request leave. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008). Where Defendant points out the deficiencies of Plaintiffs' Complaint, Plaintiffs should not have the benefit of being rescued by the Court merely because they have now become aware of these deficiencies. The request to amend is denied.

## III. CONCLUSION

For these reasons, the Motion (ECF DKT #20) of Defendant The Goodyear Tire & Rubber Company to Dismiss the Claims of Plaintiffs Tabitha Kiles, Harold Vargas, Joe Berry, Shannon Owen and David Smith under Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6) is denied as to the First Claim For Relief and granted as to the Second and Third Claims For Relief in Plaintiffs' First Amended Class Action Complaint.

**IT IS SO ORDERED.**

**DATE: 10/8/2026**

**s/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**